**WILLIAM SPENCER, et al., v. HARRY D. SPENCER**

36 So. (2nd) 424                                          June Term, 1948
July 30, 1948                                             Division A

*J. Oswald Cornelius* and *Edwin R. Dickenson,* for appellants.

*Jordan & Jordan,* for appellee.

CHAPMAN, J.:

During the year 1910 H. D. Spencer acquired by purchase Lots 726 and 727, Ruskin Colony Farms, situated in Hillsborough County, Florida, comprising some ten acres, more or less. He moved with his family upon the land, improved and cultivated it, and thereafter made it his home. On July 1, 1922, H. D. Spencer, joined by his wife Paula R. Spencer, conveyed to H. D. Spencer Lot No. 726 of Ruskin Colony Farms, being five acres, more or less. (The record is not clear as to the exact relationship between the grantor, H. D. Spencer, and the grantee, H. D. Spencer, supra, but the writer infers that it is that of father and son).

The father, H. D. Spencer (Sr.), and wife Paula R. Spencer, resided or lived upon the property from the time of acquiring a deed in 1910 until the death of the father in October, 1933, when the mother continued to reside and make her home on the property after the death of her husband in 1933 until her death, which occurred in January, 1939. The father and mother had born to them four sons and two daughters, each of whom were reared on the property. Lot No. 726, conveyed by the father and mother during the year 1922 to their son, H. D. Spencer, is not involved in this suit. The title to Lot No. 727 was vested in H. D. Spencer (Sr.) at the time of his death in October, 1933, and he was at the time the head of a family and used the property as a homestead. The children are viz: H. D. Spencer (Jr.), William Spencer, D. O. Spencer, Ed. W. Spencer, Eloise Spencer King, and Marie Spencer Priest.

On January 12, 1935, one W. T. Williams acquired for the sum of $63.75 a tax deed to Lot No. 727, Ruskin Colony Farms, for the nonpayment of taxes for the years 1930, 1931, 1932, and 1933. Some few days thereafter on, to-wit, March 14, 1935, W. T. Williams and his wife, Elma F. Williams, con-

veyed by *quit claim* deed Lot No. 727 to Harry D. Spencer for and in consideration of the sum of $63.75, plus one dollar, as recited in the aforesaid deed. Thus it will be observed that taxes on Lot 727 became delinquent prior to the death of H. D. Spencer (Sr.), which occurred in October, 1933.

On January 8, 1947, Harry D. Spencer filed a bill in equity in the Circuit Court of Hillsborough County, Florida, against his above named brother and sisters, alleging that since acquiring a quit claim deed from Williams in 1935 he had been in the continuous, open hostile and adverse possession for more than seven years of Lot 727 and had expended considerable sums of money for soil drainage, fencing and other improvements, and prayed for a decree forever quieting and confirming his title to Lot 727 against the claims of his brother and sisters above named as heirs at law of H. D. Spencer, deceased. The several defendants, by an appropriate pleading, set out that the payment by the plaintiff of the sum of $64.75 for and in obtaining a quit claim deed from W. T. Williams and wife; in law, amounted to nothing more than the payment of taxes in behalf of the several joint tenants for the years 1930, 1931, 1932 and 1933, and the defendants were willing to return to him said sum, with interest, and otherwise offered to do equity. The Chancellor entered a final decree in conformity with the prayer of the bill of complaint and the joint tenants-defendants appealed.

The record reflects sharp disputes and conflicts in the testimony by the parties to the suit and their witnesses on the question of the adverse, hostile, open and continuous possession of Lot 727 by Harry D. Spencer as against his brother and sister as joint tenants. It was the theory of the plaintiff below that his adverse possession began to run in 1935, some four years prior to his mother's death, when he acquired a quit claim deed to Lot 727 from W. T. Williams and that the statutory period of seven years had run thereafter and prior to filing the present suit in January, 1947. We recognize the established rule to the effect that a Chancellor's ruling on disputes and conflicts in the testimony will be sustained unless an aubuse of discretion is shown on appeal, but a different rule obtains here if it clearly appears that the

chancellor applied the wrong principle of law to the facts involved in the controversy.

In the case of Williams v. Clyatt, 53 Fla. 987, 43 So. 441, it was made to appear that Henry Pinkney and Annett Williams each owned by inheritance from their father an undivided one-half interest in certain land. Henry Pinkney, in August, 1905, conveyed his interest thereto to W. W. Clyatt and on July 21, 1905, Annett Williams obtained a tax deed to said land and asserted ownership of the entire fee as against her joint tenant. The Court in disposing of the contention in part said (text 53 Fla. 998) :

" . . . A coparcener cannot acquire a tax title to lands as against another coparcener because of their mutual obligations and interests. If land is sold as an entirety for non-payment of taxes by all cotenants, and is bought by one of the cotenants, it amounts merely to the payment of the tax, and the purchasing cotenant has no additional right in the land except to secure the payment of the amount paid by him for taxes for the other cotenants. Freeman on Cotenancy and Partition (2nd ed.), section 158; 27 Am. & Eng. Ency. Law (2nd ed.) 956; Black on Tax Titles (2nd ed.), section 282. See also Keil v. West, 21 Fla. 508; Petty v. Mays, 19 Fla. 652."

See Price v. McLeod 67 Fla. 171, 64 So. 769; Andrews v. Andrews, 155 Fla. 654, 21 So. (2nd) 205.

An examination of the authorities of other jurisdictions discloses that the rule of this Court as set out in Williams v. Clyatt, supra, is in line with the weight of authority. 14 Am. Jur. 123-124, par. 54, expresses the general rule viz: "When one of several co-owners of property acquires a tax title hereto, his purchase amounts merely to a payment of taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to all expenditures so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee for it is generally agreed that when the common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common can-

not by the purchase of such title assert it against his co-tenant." Exceptions to the above rule exist but such exceptions do not appear on this record. See 48 C.J.S. 933-934, par. 11; Thompson on Real Property, Vol. 4 Perm. Ed., 392-394, pars. 1860-61.

Counsel for appellee cites our holding in Wolfson v. Heins, 149 Fla. 499, 6 So. (2nd) 858, and contends that the rule enunciated therein is applicable to this controversy. An analysis of the case discloses that the cause was before the court on petition for writ of certiorari going to the sufficiency of an amended bill of complaint. We held the bill of complaint and the amendment thereto legally insufficient, which resulted in a dismissal of the bill of complaint and amendment. What we said about the rights of tenants in common was incidental to the legal sufficiency of the bill of complaint and the amendment if, indeed, it was not a dictum, and could not be construed to mean that this Court had receded from its ruling as expressed in Andrews v. Andrews and Williams v. Clyatt, supra.

It is next contended that a fiduciary relationship was not pleaded nor shown by the evidence to exist between the brothers and sisters, parties to the suit and admitted heirs of H. D. Spencer (Sr.). The answer to this contention is found in Andrews v. Andrews, supra, when we discussed the rights of tenants in common as incidental to an estate by the entirety. We, in part, said (text 155 Fla. 657-658):

" . . . Estates in coparcenary are akin both to tenancies in common and joint tenancies, but there is no need to comment on their characteristics except to say that the last cited case seems in point because the fundamental ingredient of all three, as well as of estates by the entirety, which prevents one interest holder from taking advantage of the other is their mutuality of interest and obligations . . .

"Each tenant by the entirety owes to the other the highest degree of confidence and trust. We repeat, if a tenant in common may not take advantage of his cotenant nor a parcener of his coparcener by purchasing a tax deed on the property they hold, there is all the more reason why the rule should be applied in the case of estates by the entirety . . . "

It appears by the record that Mr. Williams frequently ran for office and was elected County Commissioner from the Commissioners District in Hillsborough County in which the land involved here was located. He testified that he made it a practice to pay taxes against the lands for many of the voters of his District and pursuant thereto purchased the delinquent tax certificates and obtained a tax deed to the property involved in this suit on January 12, 1935. He conveyed the property by *quit claim* deed to the appellee some sixty days thereafter. The appellee paid him the sum of only one dollar more than the total amount paid by him for the tax deed. The mother of the parties was not molested nor evicted from the property under the tax deed, but she made it her home until the time of her death in 1939. The relation of tenants in common will not permit this appellee under the circumstances of this case to acquire this quit claim deed founded on a default in the payment of taxes and use the same in the extinguishment of the property rights of other cotenants by setting up an adverse title to the common property. Williams v. Clyatt, supra; Hodgson v. Federal Oil & Development Co., 274 U.S. 15, 71 L. Ed. 901, 47 S.. Ct. 502, 45 A.L.R. 869, Annotations page 896.

The decree appealed from is reversed with directions to dismiss the bill of complaint.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.