### Succession of SAVANT et ux. *

### Opposition of HAAS et al.
### No. 1466.

Court of Appeal of Louisiana. First Circuit.
May 14, 1935.

E. G. Burleigh, of Opelousas, for appellant.

Haas & Haas, of Opelousas, for appellees.

LE BLANC, Judge.

Dr. N. I. Savant, dentist, formerly residing at Ville Platte in the parish of Evangeline, died on January 4, 1931. His wife, Mrs. Olla Lucille Savant, had died on June 30th, the year preceding, and their estates were jointly administered in the district court of Evangeline parish.

A provisional account was presented to the court by the administrator and filed on July 1, 1931. Judgment was rendered homologating the same on July 15, 1931, and ordering that the funds on hand be distributed in accordance therewith. A final account was presented and filed in court on July 1, 1933, and it is to this account that the present opposition now before us for consideration was filed.

The opponents, Mrs. Jeanette Roos Haas and Mrs. Nathalie Haas Hirsch, who allege that they are the sole heirs and legal representatives of J. A. Haas, deceased, claim to be creditors of the estate of Dr. Savant, out of a transaction between him and their father which arose on April 11, 1922. They allege that on that date Dr. Savant executed two certain promissory notes, in the sum of $150 each, payable on December 1, 1922, and December 1, 1923, respectively, to the order

*Rehearing denied June 14, 1935.

of their father, and that the said notes were secured by two collateral notes in the sum of $150 each, dated September 19, 1921, signed by H. Deville, and in favor of Dr. N. I. Savant.

These opponents annexed to their petition two notes answering the description of those alleged by them to have been made and signed by Dr. Savant on April 11, 1922, and these notes bear an indorsement showing that such notes described as the Deville collateral notes were so given as security by Dr. Savant. The opponents allege further that on November 22, 1926, Dr. Savant received from the estate of their father the two Deville collateral notes for the purpose of collecting the same from Deville and applying the proceeds to the payment of the notes due by him to their father. They annexed to their petition a receipt dated November 22, 1926, which, in effect, supports the allegation which they made concerning the same; the receipt showing, moreover, that the first of the said Deville notes is subject to a credit of $75 paid on November 10, 1923.

Out of the various allegations contained in their petition of third opposition, it is obvious that the opponents have pitched their case on what they contend is a contract of agency between the decedent, Dr. Savant, and one Allen Dezauche, manager of the estate of their father and from whom Dr. Savant is said to have received the Deville notes for collection on November 22, 1926.

That the indebtedness or liability which they seek to enforce against the estate of Dr. Savant is for his failure to have accounted for or paid over to their father or his estate a certain sum of money collected by him on the purported agency contract is made clear from article 9 of their petition of third opposition, in which their cause of action is explicitly set out in the following words: "Said Savant informed your opponents' agent and manager, Mr. Allen Dezauche of Opelousas, that he, said Savant, had collected in full from said Deville on said notes but failed and refused to turn over said proceeds to opponents or to said Dezauche and kept the same for himself; and it is to recover the said sum of $332.00 (with interest due thereon) retained by said Savant that opponents filed this their opposition to said final account and tableau."

This allegation is followed immediately by article 10 of their petition, which reads: "Your opponents have not been placed on said final account and tableau for the amount of their aforesaid claim and aver amicable demand without avail."

Such being the claim of these opponents, they necessarily had to depend on the agency agreement as set out by them between Dr. Savant and Dezauche, the manager of their father's estate. Indeed, in such an agreement rests their only hope, as the notes described in their petition and out of which this alleged contract of agency arose appear on their face to have long since prescribed and amount to nothing as a legal obligation.

When the opponents offered to make proof of their claim on the trial of the opposition, counsel for the administratrix objected to the introduction of any parol testimony, the effect of which would be to fix liability on the estate of the decedent, on the ground that such testimony was not admissible under the provisions of Act No. 11 of 1926. Section 1 of that act, which is pertinent, reads as follows: "Be it enacted by the Legislature of Louisiana, That Parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought more than twelve (12) months after the death of the deceased."

It is clearly to be seen that if the opponents have to rely on parol evidence to prove their claim against this estate, they are barred from offering such kind of proof, as their opposition, which is in the nature of a suit against the estate of the decedent, was filed much longer than twelve months after his death.

The district judge admitted all proof, subject to the objection, and, in deciding the opposition, he held that it was unnecessary to consider the parol testimony at all as the opponents had otherwise made out their case with sufficient written evidence.

There is no doubt about it, that the receipt signed by Dr. Savant on April 22, 1926, constitutes written evidence of the contract of agency under which he undertook to collect the Deville notes which were attached to his obligation as collateral security, and from the proceeds of which his obligation was to be liquidated. There is, however, nothing beyond that in the way of written evidence which is near as positive to show that he collected those notes, and there is certainly no written evidence of any kind tending to prove that he did not remit the proceeds, granting that he had made any collections. As a matter of fact, the very allegation quoted herein, and on which these opponents' cause of action is based, implies that they had nothing but parol evidence to support the same, as they start out by say-

ing that "said Savant *informed* your opponents' agent and manager, * * * that he, said Savant, had collected in full from said Deville on said notes but failed and refused to turn over said proceeds to opponents or to said Dezauche. * * *" (Italics ours.)

Whatever written proof was offered to show that Dr. Savant had collected the Deville notes is far from being satisfactory, and, without supporting parol testimony, is hardly of any value whatever.

But under the view we take of the matter, assuming that Dr. Savant did collect some $300 from Deville, the fact still remains that the liability which these opponents are endeavoring to prove against the party deceased, Dr. Savant, is that he failed and refused to turn over to Mr. Dezauche, the manager of their father's estate, the proceeds of those collections, and that he kept them for himself, and the only proof which they tender in support of their claim is the parol testimony of Mr. Dezauche himself, from which we quote the following:

"Q. Were said collateral notes of H. Deville ever returned to you? A. They were not.

"Q. Have opponents, Mrs. J. A. Haas and Mrs. Nathalie Haas Hirsch ever received any payments from Dr. Savant on his indebtedness since Dr. Savant received the collateral notes of H. Deville? A. They have not.

"Q. Did Dr. Savant at any time thereafter ever make a statement to you concerning whether he had received any payments on said notes of H. Deville, and if so, state when and also the statement."

N. B. This testimony was further objected to on the ground of hearsay but was admitted subject to the objection.

"A. Several months after Dr. Savant received the notes, I saw him in Ville Platte and asked him if he had been able to collect the notes, *he stated that he had sued Mr. Deville and had made settlements which paid the notes, I then asked him why he had not paid us, and ne said he did not intend to pay us, we could get the money any way we wanted.*" (Italics ours.)

The most favorable impression to be gathered from that testimony, in so far as the opponents are concerned, is that it constitutes a verbal admission on the part of a party deceased, which is in itself rather weak testimony even when properly offered and admitted. In a case like this, however, coming under the prohibition contained in the section of the act of 1926 herein quoted, it cannot be considered at all.

Counsel for the opponents contend that once it has been shown that the decedent had collected money under his agency contract, the burden of proof shifted and it was incumbent on his legal heirs or representatives to show that he had remitted the proceeds or accounted to his principal therefor. Aside from the fact, as we have already stated, that the proof is far from convincing that Dr. Savant had collected the Deville notes, we do not think that the question of the shifting of the burden of proof is the one that is involved. The question is rather one of the admissibility, vel non, of any proof whatsoever of the character of that which is sought to be herein introduced. Besides, it appears to us that it would be a rather harsh rule of evidence which would impose such a burden on the legal heirs or representatives of a deceased person in a case like the present where the transactions involved took place some seven or eight years prior to the time that they are called upon to testify regarding the same. The very purpose of act No. 11 of 1926 was to force a creditor of an estate to assert his claim by suit within twelve months after the death of the decedent, if he intended to support it with parol testimony alone. Within that period the law considered that the matter may have been still fresh enough in the minds of those interested to enable them to produce sufficient proof to rebut the parol evidence produced in support of a claim against the deceased party. After that period the door is closed as it were, and they can no longer be called on to disprove it.

The learned district judge refers to the fact that Dr. Savant's notes are still in the possession of the manager of Mr. Haas' estate, and he stated that, had they been paid, Dr. Savant certainly would have demanded their return. There is a presumption in law to the effect that, where the evidence of a debt is still in the possession of the creditor, the same has not been discharged. The evidence of debt still in the possession of the opponents in this case, however, are the notes which they purposely have disregarded as the debt which they claim, as the same are prescribed on their faces. We doubt, too, that the presumption mentioned should be extended and applied in a case of this character and against a party deceased, where the law itself has made the rule of evidence far more stringent than in ordinary cases.

Our careful consideration of the whole case has led us to a different conclusion than that reached by the learned trial judge, and it be-

comes necessary, therefore, for us to reverse the judgment appealed from.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment of the district court which maintained the opposition of Mrs. Jeanette Roos Haas and Mrs. Nathalie Haas Hirsch, and which recognized them as creditors of this estate and ordered that their claim be placed on the final account of the administratrix,' be, and the same is hereby, reversed, annulled, and set aside, and it is now ordered that there be judgment herein in favor of the administratrix of the succession of N. I. Savant and Mrs. Olla Lucille Savant, his wife, and against the third opponents herein, rejecting their demand, and dismissing their opposition at their costs.